Good morning, your honors. My name is Deborah Bookout. I represent petitioner appellant Jeffrey Bradley. One of the issues presented in this case today is whether the admission of the 9-1-1 tapes, which was found to be a violation of Mr. Bradley's confrontation rights, was a harmless error. In Bochting v. Fair, this court held that evidence that cross-examination seriously decreases the possibility of an accurate conviction is unequivocal, and this is a case that clearly demonstrates why that is. At the time of the district court's decision, this court had not yet decided, Bochting, and whether Crawford was to be applied retroactively. Nevertheless, the district court found, in part relying on Crawford, that the admission of the 9-1-1 tapes was a violation of the confrontation clause, but that the error was harmless. The district court found, quote, tapes aside, there was sufficient evidence to convict Bradley beyond a reasonable doubt, end quote. The problem was with the court's decision is that this is a sufficiency of the evidence test and not a harmless error analysis under Brecht, which is whether the error had a substantial and injurious effect on the influence on the jury's verdict. What was the most egregious issue or evidence that came out of the 9-1-1 tape? In the 9-1-1 tapes, you hear in the background one or more people yelling, he has a gun, he's beating her. So, clearly, there was only one defendant, clearly, those statements were harmless. And was there evidence from any other witnesses that he had a gun? Oh, yes, sir. Okay, and was there evidence from any other witnesses that he was beating her? Yes, sir. Then why isn't that harmless error? The problem is that in this case, cross-examination, there were three other witnesses that testified consistent with some of the statements on the tape. However, cross-examination was extremely effective in testing and attacking the credibility of those witnesses, which I think is reflected in the jury's verdict, which was to acquit on three of the counts. So, the inability of Mr. Bradley to effectively cross-examine the one or more people that were on the tapes clearly affected the jury's verdict. The jury was already concerned about the credibility of the trial witnesses. So, the tapes come in with this damaging and powerful testimony that's The person who's yelling in the back, is that Mr. Kano? It's not entirely clear, Your Honor. Okay, but it was another manager who was making the 911 call at Mr. Kano's request, is that right? Yes. So, we're not sure who the voice is in the background. It could be Mr. Kano. It could be somebody else. Correct. Okay, Mr. They have shouts as testimony. Weren't they just shouts? Why do you say that? Well, it's not entirely clear. I don't have the 911 tapes. You don't have an identified witness offering a statement. We do have an identified witness of Peter. No, but these people you hear in the background are not identified witnesses. There's a witness identified as Mr. Kano who did testify at the trial. I know, but I'm asking about the 911 shouts. Those are shouts. They're not testimony by any identified person, isn't that true? Potentially, yes. Yes. Well, I mean, it's rather strange to call it testimony. It's rather, I'm sorry? It's strange to call it testimony. We don't know where it's coming from. It's just shouts. Except that it's incriminating. Well, I don't know. I mean, all kinds of noises may be incriminating, but they're not testimony. It was characterized at the trial as statements about Mr. Bradley carrying a gun and beating the victim. Which I would suggest would be testimony because that is, in fact, corroborative of what the other witnesses testified to. Oftentimes, I mean, if you just heard a scream in the background, suppose there was a scream and not a he's beating him, but just a scream, would that be testimony? Depends on what the scream is. No, it's just the scream. I would say no. What? I would say no, that wouldn't be testimony. But that is not the way these screams were characterized at the trial. Well, I think it's a real question. The 911 call, nobody mentioned your client by name, did they? No. They just said, he's got a gun. And there's no question somebody had a gun because they found one there, right? No, they did not find a gun. They did not find one at all? No, sir. Okay. Mr. Cano does testify at the trial. Was he asked whether that was his voice on the tapes? No, he wasn't. No, he wasn't. But you had an opportunity to cross-examine Mr. Cano. Mr. Bradley did have an opportunity to cross-examine him. And Mr. Cano testified that he saw him have a gun? Yes. And he testified that he saw him beating her? Yes. Okay. Who was the voice on the 911 call? It appears that, well, we know that it was Peter that made the call. We don't know who the other male voices were that were related to this. But somebody could have asked Mr. Cano if that was his voice in the background, we can say. Yes. Well, did more than one person see your client with a weapon? Yes. They all did. Okay. Which I think is one of the reasons why the introduction of the tapes was harmful and had an effect on the jury's verdict. The witnesses were clearly not credible to the jury based on their verdict. But the tapes weren't just the statements in the tapes aren't just duplicative or cumulative. They, in fact, corroborate these otherwise not credible witnesses, which made their testimony that much more credible. And then within the tape itself, those statements are made that much more credible because they're completely untested. I don't understand how you can say that it shows that the jury verdict was influenced in any way here. Why is that? Mr. Bradley was charged with seven counts, home invasion, two counts of burglary, robbery with use, kidnapping, and the ex-felon charge, and bribing witness. All of the witnesses testified to certain elements of each of those counts, of each of those crimes, but he was acquitted of one of the burglaries and the strong-arm robbery, with the exception of the intimidating witness. Only Ms. Bradley testified to that. But the other witnesses testified to two of the counts, I mean, to the elements of two counts that he was acquitted of. So that would lead me to believe that the jury had some doubts as to the credibility of the witnesses that testified at trial. Which counts would the possession of the gun and the statement, he is beating her, have supported? It would have supported the kidnapping, where Ms. Bradley was the victim. The other witnesses testified to him dragging her out. By her hair. By her hair. And they found the hair in the parking lot. Yes. And they all testified that they saw him holding a gun to her side. And then the strong-arm robbery was witnessed, and the first burglary and the home invasion were witnessed by Laverne. I'm sorry, but the statement, he is beating her, probably wouldn't support a burglary, would it? It might support a kidnapping. One of the burglaries was that he entered the room to commit an assault upon her. Okay, so you're saying that this is supportive of the assault. The assault that was to wit of the burglary charge. Then the strong-arm was him taking forcibly money from her, and Ms. Griffin testified that she saw, or actually Mr. Kano, I believe, testified that he saw a gun as well as Ms. Griffin. I see that I have just a little bit more time I'd like to reserve for rebuttal of the court. Okay. Thank you. Good morning, and may it please the Court. My name is Jamie Resch. I'm here on behalf of the respondent, James Shomig. Let me talk for a minute about some of the facts relating to the 911 telephone call, and then we'll discuss why the admission of that call was harmless error. Kano did testify at the trial, and from everything that we have in the record, it appears he is indeed the voice, if there was a voice, that we hear on the 911 call. He testified that he went and met with a manager. How would you know that that's his voice? Because Kano testified that he's the one that went and saw the other manager and instructed him to make the telephone call. But he doesn't testify that it is his voice. He does not testify directly that it's his voice. But he said he made the phone call. Did he say that? Well, as far as we know, there was only the one call relating to that incident, and he's the one that says he made the call. Well, he wasn't actually the one who makes the call. He's the one who directed Peter to make the call. Yes. Kano goes, directs Peter to make the telephone call. But as Bradley's counsel has noted, we don't have the call before us. We don't know what the substance of these voices being shouted is. However, what we do have in the record is discussions between trial counsel and the prosecutor, which appear to indicate that the substance of the call was that Bradley has a gun, basically, a man fitting his description that that person has a gun. And I realize that I was faxed at least a copy of what purported to be the telephone calls, and I don't know if the court received that. But reading through it, it appears to corroborate exactly those elements, that here's a description of the suspect, the person has a gun. And those are exactly the things that everybody testified to at the trial. There were three witnesses which confirmed that. And who were those witnesses? It was Lisa Bradley, and then Kano, and then I believe Fairfax was the other person. And we cited those in the brief with the specific portions of the record where those people make that testimony. Okay, so it's the victim herself, and remind me who Fairfax is. The victim's friend. Now the lady, right? Yes. So here we have a case where there's three people who indicate it's Bradley and that he has a gun. And to the extent that the admission of the call was a violation of Crawford, I believe it simply would be found to be harmless error. There isn't anything unique about the information in the call that wasn't presented by other eyewitness testimony. And this argument that while we maybe could have impeached the person who made the telephone call, I believe that's simply speculation. Bradley hasn't pointed to anything that he would say is inaccurate about the call. It's undisputed that it's him, and obviously he disagreed that he had a gun, but there were three other witnesses who saw him with it. So it isn't clear what even there would be to impeach because factually speaking the call appears to be accurate. The petitioner's counsel makes a lot of the fact that her client was acquitted on some of these counts, and that shows, in fact, the 9-11 call was very important to the jury. Can you make that out? Well, I might point out that this is habeas. So the presumption is going to be that the conviction is valid. At this point, we don't go second-guessing what the jury was or wasn't doing. The presumption is they properly weighed the evidence and determined that he did have a gun. The things which he was acquitted of were charges which I believe, at least, were solely supported by Lisa Bradley's testimony. So if there is an argument that someone's credibility could have been attacked, indeed that person was Lisa Bradley and her credibility was attacked. The case arises out of what appear to be two separate incidents. Bradley comes to the hotel and arguably enters the room and receives some $130 from Lisa under circumstances which were alleged to be a robbery. He then returns with a firearm, and this is where we see in the record the instance of him allegedly dragging her out of the room by her hair. And this is the event which Kano sees, and this is the time at which he's threatened with a gun and goes to make the telephone call. So, you know, to the extent that it would impact a witness's testimony, I believe that that has already been accounted for because Lisa Bradley apparently was impeached and her testimony disbelieved in some part. However, we have the instance where these other witnesses corroborate the part where Bradley has a gun, as we've seen in the record. You know, if there aren't any other questions, I believe that about responds to it. I don't think so. Thank you, counsel. Thank you. Okay. Ms. Boccaccio, you have some time remaining. Thank you. I'd like to point out that the error of the 9-1-1 tape's admission is aggravated by the fact that Mr. Bradley or the prosecution failed to disclose impeachment evidence with respect to Ms. Bradley. The prosecution made a promise of favorable treatment to Lisa Bradley. They promised specifically that they would speak on her behalf at her upcoming revocation hearing and explain to the court that she was an absconder because she was a victim of domestic violence. Bradley specifically requested Brady and Giglio material. So the state failed to disclose this particular promise. Had this information been disclosed, then Mr. Bradley would have been able to cross-examine or impeach Ms. Bradley with this information. And the opposing counsel just got finished saying that Ms. Bradley, on the one hand, was successfully impeached. On the other hand, she wasn't successfully impeached, depending on what part of his argument you were listening to. And the problem with that is because there was some weighing of the credibility of each witness, the failure of the state to disclose this further impeachment evidence of Mr. Bradley clearly affected the jury's verdict. Mr. Bradley's due process rights were violated by the state's failure to disclose this impeachment evidence. And in conjunction with the confrontation rights violation, he's entitled to a reversal of the district court's order. Thank you. Thank you. We thank both counsel for the argument.
judges: Noonan, Siler, Bybee